# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| PSG ENERGY GROUP, LLC and ENVELOP GROUP, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:18-cv-3008 |
| JAMISON M. KRYNSKI, RPG ENERGY GROUP, INC., COLTON COOPER, JEFFREY A. COLE, and TYLER G. WELSH, | ) ) ) ) ) ) | Jury Trial Demanded |
| Defendants. | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES DUE TO TRADE SECRET MISAPPROPRIATION, RACKETEERING, COMPUTER TRESPASS, THEFT, TORTIOUS INTERFERENCE, AND OTHER WRONGFUL CONDUCT; DEMAND FOR JURY TRIAL

Plaintiff, by counsel and for its Complaint against Defendants, states:

## Introduction

On July 20, 2018, Plaintiff PSG's CEO Krynski, was advised that his employment status was being suspended with pay pending an investigation into evidence of his theft from and self-dealing with respect to PSG. A meeting of the company's managers and members was set for the following Monday, to which Krynski (a PSG member) was invited to participate.  Krynski did not deny or dispute the charges against him and joined in the unanimous vote taken at the meeting to uphold his suspended status yet convert it to one without pay.  In his capacity as a member, Krynski subsequently sought confidential information of PSG to attempt to buy out the other member (Plaintiff Envelop); the requested information was provided on the condition of

confidentiality and non-use/non-disclosure.   When the purchase attempt failed, the parties otherwise attempted resolution, which failed. Despite his continuing status as a member of PSG and the legal and contractual duties that he owes to the company (and about which he was expressly reminded), Krynski helped to form a competing company (Defendant RPG Energy Group) on September 14, 2018 and serves as its CEO.   Krynski then obtained additional confidential information belonging to PSG from one or more of its employees whom he has raided in hiring away several of them from PSG over the past couple weeks.   Krynski is trying to springboard his new company to success from the theft of PSG's money, property, and confidential information, as well as the employees whom he hired away from Plaintiff.   This lawsuit necessarily results in order to enjoin Defendants' wrongful activities, to stop irreparable harm being suffered by Plaintiff, and to otherwise make Plaintiff whole.

## Parties

1.      Plaintiff PSG Energy Group, LLC ("PSG") is an Indiana limited liability company with its principal place of business located at 905 North Capitol Avenue, Indianapolis, Marion County, Indiana.   Its only two members are Co-Plaintiff Envelop Group, LLC (80% owner) and Defendant Krynski (20% owner).

2.      Plaintiff Envelop Group, LLC ("Envelop") is an Indiana limited liability company with its principal place of business located at 905 North Capitol Avenue, Indianapolis, Marion County, Indiana.   Its only members and owners are three individuals (Michael Martin, Travis Ihnen, and AJ Wilkerson), each of whom is a citizen of the State of Indiana.

3.      Defendant Jamison M. Krynski ("Krynski") is a citizen of the State of Illinois and resides at 3646 Bayview Drive, Danville, Illinois.

4.      Defendant RPG Energy Group, Inc. ("Competitor") is an Indiana corporation with its principal place of business at 5610 Dividend Road, Indianapolis, Marion County, Indiana.

5.      Defendant Colton Cooper ("Cooper") is a citizen of the State of Indiana and resides at 273 Nicole Boulevard, Avon, Hendricks County, Indiana.

6.      Defendant Jeffrey A. Cole ("Cole") is a citizen of the State of Indiana and resides at 8016 Hague Road, Indianapolis, Marion County, Indiana.

7.      Defendant Tyler G. Welsh ("Welsh) is a citizen of the State of Indiana and resides at 19665 Wagon Trail Drive, Noblesville, Hamilton County, Indiana.

## Jurisdiction & Venue

8.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1331 and 28 U.S.C § 1367, because this action invokes questions of federal law and matters of state law that form the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants reside or are located in the Southern District of Indiana and because the events giving rise to this action occurred in the Southern District of Indiana.

## Facts Relevant to All Claims

10.      PSG was formed on May 26, 2016 and engages in the business of providing engineering solutions, products, and construction for renewable and alternative energy strategies including photovoltaic (solar energy) systems.

11.      PSG was formed and funded by Envelop to complement its business of the customization and design of facility technology operating systems to achieve environmental and economical balance, as well as to complement one of Envelop's other affiliates, Open Control Systems ("OCS"), LLC which engages in the business of facility automation and optimization.

12.     On or about June 8, 2016, PSG hired Krynski to serve as its CEO.  In conjunction with hiring Krynski, PSG required Krynski to sign an "Employment Agreement," a true and accurate copy of which is attached hereto and made a part hereof as <u>Exhibit 1</u>.

13.     Among other terms, the Employment Agreement in summary provides that:

- PSG's "Trade Secrets" (as that term is defined in paragraph 6 of the Employment Agreement) are to be maintained as confidential;

- During the employment term and for twelve (12) months thereafter, unless extended due to a breach, Krynski is prohibited from selling any product or performing any services for PSG's "Customers" (as that term is defined in paragraph 6 of the Employment Agreement) that are the same as or substitutes for the products or services offered by PSG, except in the proper performance of duties to PSG;

- During the employment term and for twelve (12) months thereafter, unless extended due to a breach, Krynski is prohibited from soliciting or assisting/encouraging any person or entity to sell any product or perform any service for PSG's Customers that are the same as or substitutes for the products or services offered by PSG, except in the proper performance of duties to PSG; and

- During the employment term and for twelve (12) months thereafter, unless extended due to a breach, Krynski is prohibited from advising or in any soliciting/encouraging any of PSG's Customers to discontinue or curtail their business with PSG, except in the proper performance of duties to PSG.

14.     In conjunction with hiring Krynski, PSG granted him, without charge, a twenty percent (20%) ownership interest and membership status in PSG (a portion of which remains subject to certain vesting requirements), and Krynski signed PSG's "Operating Agreement," a true and accurate copy of which is attached hereto and made a part hereof as <u>Exhibit 2</u>.

15.     Among other terms, the Operating Agreement in summary provides:

- Section 5.6, Conflicts of Interest: A member may transact business with the company ***with the approval of the members***, and it may be permissible for a member to have an interest in a transaction ***if the transaction is fair to the company or if the disinterested members know the material facts of the transaction and the member's interest in the transaction and they authorize, approve, or ratify the transaction***.

- Section 5.8, Confidentiality:  PSG's business practices, business and financial records and transactions, and other trade secrets are confidential information and shall not be disclosed to persons not members or otherwise employed in the management of PSG's business.

- Section 5.9, Prohibited Transactions:  No member shall perform an act in violation of the Operating Agreement; commit any act that injures or impairs PSG's business or prospects or the ability to carry on its business; act with intent to harm PSG's business operations; or abandon, wrongfully transfer, or dispose of any PSG property.

- Article VI:  As a manager, Krynski must perform his duties in good faith, in a manner reasonably believed to be in the best interests of PSG, and with the care that an ordinarily prudent person in a like position would use in a similar circumstance.

16.    When it hired employees, PSG provided each of them with the employee handbook of its related company, OCS, and informed them that the policies therein equally applied to PSG employees (hereinafter, the "Handbook," true and accurate excerpts of which are attached hereto and made a part hereof as <u>Exhibit 3</u>).  Defendants Krynski, Cooper, Cole, and Welsh received or reviewed the Handbook during their employment with PSG.

17.    Among other terms, the Handbook in summary provides:

- Employees are expected to turn in all company property at the time that their employment terminates;

- Non-Disclosure:  It is very important ... to protect confidential business information and trade secrets, which include but are not limited to, compensation and payroll data, computer process, programs, and codes; customer lists and preferences; financial information; labor relations strategies, marketing strategies; new materials research; pending projects and proposals; production processes; proprietary programming information; research and development ideas; scientific data, formulas, prototypes; technological data and prototypes;

- "If you improperly use or disclose a trade secret or confidential business information, you will be subject to disciplinary action … and legal action";

- Information regarded as confidential, including payroll, financial statements, customer lists, price lists and other information, should be handled carefully;

- Confidential information regarding the company or its customers should in no way be divulged verbally, in written correspondence, or email;

- Employees are responsible for protecting and controlling property provided and must return any such property promptly upon request, or immediately when the employment relationship terminates;

- Company property includes client lists, computers, manuals, cell phones, security passwords, written materials; and

- If an employee does not return company property, the company may take legal action to get it back.

18.    Cole served as a project manager for PSG between August 22, 2016 and November 17, 2017 when he resigned.  Upon information and belief, subsequent to his resignation from PSG, Cole has been employed by a company that is not associated with the parties and claims asserted herein.

19.    On July 20, 2018, PSG notified Krynski in writing of his immediate suspension from all duties for PSG pending an internal investigation that to date had revealed "numerous instances of what appeared to be serious misconduct and dishonest activities . . . including the misappropriation of many thousands of dollars of company funds …."  A true and accurate copy of this "Suspension Notice" is attached hereto and made a part hereof as Exhibit 4.

20.    Among other terms, the Suspension Notice instructed Krynski that, during the suspension period, he was not to contact any PSG customer, employee, vendor or subcontractor or their employees, or any PSG independent sales agent.  The Suspension Notice further informed Krynski of a special meeting of the Board of Managers of PSG to vote on the terms of Krynski's suspension.

21.    As noticed, the special board meeting was held on July 23, 2018.  By unanimous vote of the owners and Board of Managers of PSG, including Krynski, it was agreed that Krynski would remain suspended from all duties and without compensation.

22.     Pursuant to rights under Section 15.10 of the Operating Agreement, Envelop provided a "Push-Pull Option Notice" to Krynski, a true and accurate redacted[1] copy of which is attached hereto and made a part hereof as <u>Exhibit 5</u>, whereby Krynski was then contractually obligated to either sell his ownership in PSG to Envelop or buy Envelop's ownership interest in PSG.

23.     The Push-Pull Option was structured such that Krynski's purchase price for his purchase of Envelop's ownership interest and, alternatively, Envelop's purchase price for the purchase of Krynski's ownership interest, reflected the amount that was required for Krynski to make restitution of the funds he had misappropriated from PSG, based upon the facts known to Envelop at that time.   However, Envelop subsequently determined that the misappropriated amount was likely much greater.

24.     On July 24, 2018, in response to the Push-Pull Option Notice, Krynski sent written notice to Envelop of his election to purchase Envelop's ownership interest in PSG, a true and accurate copy of which is attached hereto and made a part hereof as <u>Exhibit 6</u>.  As a result of such election, PSG's other managers reminded Krynski of his confidentiality obligations under the Operating Agreement, and agreed to allow Krynski to share PSG's confidential information with his potential investors as part of Krynski's due diligence, so long as Krynski's prospective investors signed a confidentiality agreement prohibiting them from using or disclosing PSG's confidential information.  A true and accurate copy of the "Confidentiality Conditions" imposed by PSG (inclusive of the "Confidentiality Agreement" to be signed in advance of anyone receiving PSG's confidential information) is attached hereto and made a part hereof as <u>Exhibit 7</u>.

---

[1] Confidential information not relevant hereto has been redacted, but Krynski was already provided the original, unredacted version.   Should the information be required, Plaintiff will make it available subject to an appropriate protective order.

25.     PSG subsequently received signed Confidentiality Agreements from three prospective investors identified by Krynski. Upon information and belief, Krynski disclosed PSG's confidential information to other persons without requiring them to sign a Confidentiality Agreement.

26.     Pursuant to Section 15.10 of the Operating Agreement and his written election, Krynski was required to close on his purchase of Envelop's ownership interest in PSG within sixty (60) days following the date of the Push-Pull Notice. Krynski was unable to secure the funds necessary for the purchase of Envelop's ownership interest in PSG and the related closing-related expenses, and defaulted on his obligation to complete such purchase.

27.     Krynski has never refuted the evidence of theft, dishonesty, or any other serious wrongful conduct that PSG presented to him.

28.     While its investigation is ongoing, PSG has discovered numerous acts of theft from it by Krynski to date that presently total more than $100,000 in value, including but not limited to:

  a.  Unauthorized charges on Krynski's company credit card to make personal purchases such as from Amazon, for tax software, dining, lottery tickets, DirecTV, Sirius XM radio, Cadillac and OnStar, "Rocket Lawyer," credit repair service, to pay personal quarterly estimated tax payments, family automobile gas charges, and to take several vacations, including one to Hawaii;

  b.  Unauthorized materials, equipment and service charges for installation of solar panels at Krynski's personal residence;

  c.  On information and belief, unauthorized skimming of equipment and/or materials from customer projects to benefit employees or other third parties, including solar panels for the personal residences of Cole and Cooper;

  d.  Unauthorized promises by Krynski for products/services and/or warranties to pending PSG customers whose demands therefor are causing PSG to incur extra time and expense to address them;

    e.   On information and belief, Krynski's receipt of a share of profits, commissions, or kickbacks due to his undisclosed ownership in a subcontractor to PSG (Energient, Inc.) and possibly other to-be-determined similar arrangements; and

    f.   On information and belief, other unauthorized transactions, agreements, projects, warranties or promises were offered or made by Krynski.

29.    Without the knowledge or approval of PSG's other managers or Envelop at the time, Krynski was an owner in a business that was paid as a subcontractor for PSG projects (Energient, Inc.), which role presented a conflict of interest requiring full disclosure to and approval by Envelop or PSG's other managers.

30.    On information and belief, Energient had proposed granting this ownership interest in Energient to PSG, but Krynski directed Energient to instead grant the ownership interest to Krynski personally.

31.    When confronted by the other managers of PSG as to this ownership, Krynski misrepresented the extent of his ownership interest in Energient. Additionally, Krynski subsequently misrepresented to the other managers of PSG that he had relinquished his ownership of Energient when, in fact, he had not.

32.    On information and belief, Krynski granted work to Energient without allowing competitors (even PSG's affiliated businesses) to bid for such work, and possibly caused PSG to pay above-market prices to Energient for same.

33.    On September 14, 2018, Competitor was formed. A true and accurate copy of the Articles of Incorporation filed by Competitor with the Indiana Secretary of State is attached hereto and made a part hereof as Exhibit 8.

34.    On information and belief, Competitor is engaging in the same or substantially similar business of PSG, namely the design, engineering, sale, and installation of alternative energy solutions, including solar panels.

35.     Also on September 14, 2018, Krynski, acting as CEO for Competitor, made a written employment offer to his son (Reed Krynski), who had recently resigned his employment with PSG, a true and accurate copy of which offer is attached hereto and made a part hereof as Exhibit 9.  On information and belief, Reed Krynski is currently working for Competitor.

36.     To try to prevent additional employee departures, PSG informed its employees of Krynski's suspended status for the reason of a pending investigation into his believed acts of theft from PSG.

37.     Nevertheless, since September 14, 2018, several other PSG employees have resigned from PSG to go work for Krynski and Competitor, including Cooper, who fainted when PSG asked him for whom he was going to work.

38.     As employees were resigning to work for Competitor, PSG met with Welsh to ask whether he had plans to leave PSG and work for Competitor.  Welsh went to great lengths to deny any such notion, proclaiming it was ridiculous and that he had a family to support.  Nevertheless, in a matter of days, Welsh resigned from PSG to go work for Competitor.

39.     Before exiting PSG, Cooper sent several confidential and proprietary PSG documents to Krynski's personal email address and otherwise aided Krynski in establishing and/or promoting Competitor.

40.     On information and belief, Krynski and the other employees who departed from PSG to go work for Competitor had planned in advance to do so, and one or more of them also removed or copied valuable confidential and proprietary information of PSG, sanitized their computers of their misdeeds, and/or sabotaged pending documents to harm PSG before they departed.

41. On information and belief, Competitor and PSG's former employees working for Competitor are using PSG's confidential and proprietary information and its trade secrets in order to compete with PSG.

42. Krynski remains a member of PSG while forming and leading Competitor in competing with PSG, armed with PSG's confidential information that was stolen from PSG and PSG employees that were raided by Krynski and Competitor to compete with PSG.

## COUNT I: MISAPPROPRIATION OF TRADE SECRETS

43. PSG incorporates the foregoing paragraphs numbered 1 through 42 as if fully set forth herein.

44. PSG's confidential and proprietary information derives independent economic value from not being known, or readily ascertainable through proper means, by persons who would benefit from its disclosure or use such as Competitor.

45. PSG has invested significant time and expense to develop its confidential and proprietary information and has taken reasonable measures to protect the secrecy of its confidential and proprietary information, including but not limited to restricting access to such information to only employees with a "need to know" it in order to perform their work for PSG, restricting access to PSG's computer network, password-protected computers, and the use of confidentiality policies and/or non-disclosure agreements, such as the Employment Agreement, Operating Agreement, and Confidentiality Agreement.

46. PSG's former employees who now work for Competitor (including Krynski, his son Reed Krynski, Cooper, and Welsh) only learned of PSG's confidential and proprietary information, and only had access to it, through their employment by PSG and by being subject to PSG's protective agreements, handbook, policies, rules, and practices.

47.     PSG's confidential and proprietary information, including but not limited to customer and pipeline information; customized software programs; bid/proposal status, processes and documents; marketing and customer development; scientific and technological research and development; personnel information; and financial information (examples of which include the materials emailed to Krynski by Cooper, the confidential information shared with Krynski and designated as confidential during Krynski's exercise of the Push-Pull Option, and information that was taken or copied from PSG to be used by Competitor), constitute trade secrets pursuant to federal law, namely the "Defend Trade Secrets Act of 2016," 18 U.S.C. §1832 *et seq*. and also pursuant to Indiana law, namely the "Indiana Uniform Trade Secrets Act," Indiana Code §24-2-3-1 *et seq*. (hereinafter collectively referred to as the "Trade Secrets").

48.     Krynski and Cooper (and others suspected to be discovered hereafter) owed duties to PSG to maintain the Trade Secrets as confidential; they breached those duties when obtaining, disclosing, and using the Trade Secrets by improper means and in breach of their obligations to PSG.

49.     On information and belief, Competitor obtained possession of the Trade Secrets from Krynski, Cooper, and/or other employees hired away from PSG with knowledge that the Trade Secrets were obtained in breach of duties owed to PSG or by improper means.

50.     Krynski, Cooper, and Competitor misappropriated the Trade Secrets belonging to PSG.

51.     Any ongoing retention, use, or disclosure of the Trade Secrets constitutes misappropriation by any of Defendants or those acting with or for them who have access to or use or disclose the Trade Secrets when they now should not have possession of or use the same, even if from memory.

52.      The misappropriation of the Trade Secrets by Krynski, Cooper, and Competitor, (and others suspected to be discovered hereafter) for their own benefit and to the detriment of PSG was willful and malicious.

53.      There is a genuine, imminent threat that Krynski, Cooper, and Competitor (and others suspected to be discovered hereafter) will inevitably continue to use, disclose, and benefit from the Trade Secrets.

54.      The use or inevitable disclosure of the Trade Secrets by Krynski, Cooper, and Competitor (and others suspected to be discovered hereafter) is unauthorized, unlawful, and in breach of their legal, fiduciary, and/or contractual duties to PSG.

55.      The use or inevitable disclosure of the Trade Secrets by Krynski, Cooper, and Competitor (and others suspected to be discovered hereafter) has caused and will continue to cause irreparable harm to PSG by the ongoing dilution in value of the Trade Secrets.

56.      PSG has suffered and will continue to suffer damages from the use or inevitable disclosure of the Trade Secrets by Krynski, Cooper, and Competitor (and others suspected to be discovered hereafter) by way of lost business and profits.

57.      For violations of the "Defend Trade Secrets Act of 2016," Krynski and Cooper (and others suspected to be discovered hereafter) are subject to fines, imprisonment up to ten (10) years, or both, while Competitor is subject to fines in the greater amount of $5,000,000 or three times the value of the stolen Trade Secrets, including PSG's expenses for research and design and other costs of reproducing the trade secrets that Competitor has avoided through its theft of trade secrets  (18 U.S.C. §§ 1832(a) and (b))

58.      Pursuant to applicable federal and state law, PSG is entitled to (and does seek herein) the following relief for the misappropriation and ongoing or inevitable disclosure and use

of its Trade Secrets by Krynski, Cooper, and Competitor (and others suspected to be discovered hereafter): (a) civil seizure and preliminary and permanent injunctive relief to prevent any further use or disclosure of the Trade Secrets; (b) return of the Trade Secrets to PSG, as well as all materials, information, and products derived from them to PSG; (c) all other equitable and affirmative acts necessary to protect the Trade Secrets from any further use, disclosure, or dilution; (d) an award of damages for PSG's losses due to the misappropriation, including lost business, lost profits, and unjust enrichment; (e) an award of exemplary damages of two (2) times the amount of PSG's damages, plus PSG's reasonable attorneys' fees for the willful and malicious misappropriation of Trade Secrets; and (f) all other proper and appropriate relief allowed by law.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski, Cooper, and Competitor (and others discovered and proven hereafter) for injunctive relief, damages, exemplary damages, attorneys' fees, and all other appropriate relief awardable due to their misappropriation of the Trade Secrets.

### COUNT II:  VIOLATION OF COMPUTER FRAUD & ABUSE ACT

59.    PSG incorporates the foregoing paragraphs numbered 1 through 58 as if fully set forth herein.

60.    PSG's computer system is a "protected computer" as defined in 18 U.S.C. § 1030(e)(2) because it is used in or affects interstate commerce or communications.

61.    When Cooper and Krynski obtained PSG's confidential and proprietary information, including Trade Secrets, by downloading and emailing it to personal email account(s) or taking it by other methods, Cooper and Krynski received information that they

were not entitled to obtain for personal use, therefore "exceed[ing] authorized access" as defined in 18 U.S.C. § 1030(e)(6).

62.     Cooper and Krynski (and others suspected to be discovered hereafter) violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (hereinafter, the "Act").

63.     PSG has suffered a "loss" as defined in 18 U.S.C. § 1030(e)(11) from Cooper's and Krynski's violation of the Act, because the value of the Trade Secrets and other confidential/proprietary PSG information misappropriated by Cooper and Krynski exceeds $5,000, and PSG has and will incur costs to investigate and assess the damages caused thereby and to respond to such misconduct.

64.     Pursuant to the Act, PSG is entitled to (and does seek herein) recovery of its compensatory damages and injunctive relief pursuant to 18 U.S.C. § 1030(g).

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski and Cooper (and others discovered and proven hereafter) for injunctive relief, compensatory damages, and all other appropriate relief awardable due to their violation of the Act.

## COUNT III:  COMPUTER TRESPASS

65.     PSG incorporates the foregoing paragraphs numbered 1 through 64 as if fully set forth herein.

66.     PSG maintains its computers on a "computer network" and a "computer system" as those terms are defined in Ind. Code § 35-43-2-3(a).

67.     Cooper and Krynski were not authorized to access PSG's computer network or computer system to obtain and transfer files and/or documents from PSG's computers to their personal email accounts for either their personal or commercial use, or to benefit Competitor or any other third party.

68.     By knowingly or intentionally accessing PSG's computers to obtain and transfer PSG's files and/or documents for their own personal or commercial use or for Competitor or any other third party to use, Cooper and Krynski (and others suspected to be discovered hereafter) committed computer trespass in violation of Ind. Code § 35-43-2-3(b).

69.     Pursuant to Indiana Code § 34-24-3-1, PSG is entitled to (and does seek herein) recovery of three (3) times its actual damages, costs, and attorneys' fees.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski and Cooper (and others discovered and proven hereafter) for triple the full amount of all actual damages incurred by PSG (including but not limited to PSG's lost profits), costs, attorneys' fees, and all other appropriate relief awardable due to their computer trespass.

## <u>COUNT IV:  TORTIOUS INTERFERENCE</u>

70.     PSG incorporates the foregoing paragraphs numbered 1 through 69 as if fully set forth herein.

71.     PSG's sales of solar energy systems to customers can involve millions of dollars and can sometimes take years to close, especially when the customers use government funding. As such, the sale process requires significant upfront time and expense to research and develop leads, educate prospective customers of the various options and cost savings, quote suitability and price ranges, propose engineering designs to meet needs, and await budgetary approval and/or a bid process.  As such, PSG's identified prospects and the corresponding research, development, pricing, and funding information as to each such prospect is a valuable part of the Trade Secrets.

72.     Only through their employment with PSG did Krynski and Cooper (and the other former PSG employee Defendants) have access to the Trade Secrets.

73.     Certain Trade Secrets (including but not limited to all of PSG's pipeline details for all prospective customers) were only shared with Krynski subject to the Confidentiality Conditions.

74.     As a consequence of their employment, Krynski and Cooper (and the former PSG employee Defendants) know the details of PSG's pending and prospective sales.

75.     As a consequence of the Confidentiality Conditions, Krynski and his potential investors who signed the Confidentiality Agreement (or improperly received the Trade Secrets without doing so) know the details of PSG's pending sales.

76.     Only as a consequence of their employment with PSG did Krynski and the other employee Defendants know each other's identities, talents, goals, strengths/weaknesses, and compensation requirements (which comprise a valuable component of the Trade Secrets).

77.     Competitor and Krynski (and suspected others to be discovered hereafter) tortiously interfered with PSG's employment relationships with the employees by soliciting them and inducing them to leave PSG (or may yet leave PSG) to go work for Competitor.  The solicitations, inducement, and hiring away of employees from PSG by Competitor was intentional and without a legitimate purpose because it was a scheme that misappropriated the Trade Secrets, required Krynski (and possibly others) to breach their contractual and legal obligations to PSG, all in order to unfairly compete with and harm PSG.  PSG has been harmed as a result of the mass exodus of its employees to Competitor.

78.     On information and belief, Krynski and Competitor have tortiously interfered with PSG's business relationships because:

    a.  PSG enjoys valid relationships with its pending sale customers;

    b.  Defendants have knowledge of the relationships solely from their employment or other confidentiality obligations owed to PSG;

c.  Defendants intentionally interfered with PSG's relationships with pending sales customers by contacting them for the purpose of providing the same or substitute services to them as PSG is providing or offering to them, effectively springboarding from the knowledge and use of the customer's status and project details with PSG rather than taking the time in years and expense to start anew with Competitor's own research and development efforts to identify and develop prospects;

d.  Defendants lacked justification for their interference because, through the theft and use of Trade Secrets in order to identify and target PSG's sales customers, they violated legal and contractual obligations in doing so; and

e.  PSG has been harmed by Defendants' wrongful interference with the relationships.

79.    By breaching their confidentiality obligations as well as state and federal laws protecting Trade Secrets and PSG's computers and systems, Competitor, Krynski, and suspected other Defendants employed wrongful means to solicit PSG's sales customers; therefore, Defendants' interference with PSG's business relationships was not justified.

80.    PSG is entitled to (and does seek herein) injunctive relief, damages for losses suffered as a result of Defendants' tortious interference with its business relationships, and other appropriate relief to be made whole.

81.    Competitor's, Krynski's, and suspected other Defendants' tortious interference with PSG's employment and business relationships was willful and malicious, entitling PSG to recover punitive damages, costs, and attorneys' fees.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Competitor, Krynski and Cooper (and others discovered and proven hereafter) for injunctive relief against any similar acts and for all damages incurred by PSG, punitive damages, costs, attorneys' fees, and all other appropriate relief awardable due to their tortious interference with PSG's business relationships.

## COUNT V:  THEFT

82.     PSG incorporates the foregoing paragraphs numbered 1 through 81 as if fully set forth herein.

83.     When Cooper transferred PSG's files and documents from PSG's computers to Krynski's personal email account or otherwise, Cooper and Krynski asserted unauthorized control over PSG's files and documents with intent to deprive PSG of their value, thereby committing theft pursuant to Ind. Code § 35-43-4-2.

84.     On information and belief, Competitor is using PSG's stolen information by and through Krynski and Cooper (and others suspected to be discovered hereafter) with knowledge of or even encouragement of the theft and Competitor is thereby complicit in such theft.

85.     During their employment with PSG but just discovered by PSG as part of its investigation into the activities of its former employees, Krynski, Cooper, and Cole stole solar energy products and equipment costing tens of thousands of dollars from various PSG projects and caused them to be installed on their personal residences, stored away elsewhere, and/or sold or provided to others, with intent to deprive PSG or its customers of their value; such acts were unauthorized because none of them disclosed these activities to PSG's other managers or to Envelop as majority owner of PSG, thereby committing theft pursuant to Ind. Code § 35-43-4-2.

86.     Krynski's theft of approximately $100,000 or more from unauthorized charges on PSG's credit accounts or from applying payments from PSG's monies to pay for numerous personal expenses, goods and services for personal use, and vacations violated Ind. Code § 35-43-4-2.

87.     While its investigation is ongoing, Krynski's, Cooper's, and Cole's theft in skimming solar energy products and equipment from customer projects, as well as Krynski's

unauthorized charges to PSG, constituted tax evasion, may have harmed PSG's customers as well as PSG's reputation, and diluted PSG's profit margins.

88.     Pursuant to Indiana Code § 34-24-3-1, PSG is entitled to (and does seek herein) its damages, recovery of three (3) times its actual damages, costs, and attorneys' fees for each act of theft.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski, Cooper, Cole, and Competitor (and others discovered and proven hereafter) for its damages, triple the full amount of all actual damages incurred by PSG (including but not limited to PSG's lost profits), costs, attorneys' fees, and all other appropriate relief awardable due to their theft of property and information from PSG.

## COUNT VI:  CONVERSION

89.     PSG incorporates the foregoing paragraphs numbered 1 through 88 as if fully set forth herein.

90.     When Cooper transferred PSG's files and documents from PSG's computers to Krynski's personal email account, Cooper and Krynski asserted unauthorized control over PSG's files and documents, thereby committing conversion pursuant to Indiana Code § 35-43-4-1.

91.     Krynski's taking of approximately $100,000 or more from unauthorized charges on PSG's credit accounts or from applying payments from PSG's monies to pay for numerous personal expenses, goods and services for personal use, and vacations constituted conversion pursuant to Indiana Code § 35-43-4-1.

92.     On information and belief, Competitor is using PSG's stolen information by and through Krynski and Cooper (and others suspected to be discovered hereafter) with knowledge,

or even encouragement, of the conversion, and Competitor is thereby complicit in such conversion.

93.     The theft in skimming solar energy products and equipment from customer projects by Krynski, Cooper, and Cole constituted unauthorized control over the same, thereby committing conversion pursuant to Indiana Code § 35-43-4-1.

94.     Pursuant to Indiana Code § 34-24-3-1, PSG is entitled to (and does seek herein) recovery of three (3) times its actual damages, costs, and attorneys' fees.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski Cooper, Cole, and Competitor (and others discovered and proven hereafter) for its damages, triple the full amount of all actual damages incurred by PSG (including but not limited to PSG's lost profits), costs, attorneys' fees, and all other appropriate relief awardable due to their conversion of property and information from PSG.

## COUNT VII:  RACKETEERING & CORRUPT BUSINESS INFLUENCE

95.     PSG incorporates the foregoing paragraphs numbered 1 through 94 as if fully set forth herein.

96.     Pursuant to the Racketeer Influenced and Corrupt Organizations statute at 18 U.S.C. § 1961-68 as well as Indiana's similar statute at Ind. Code §35-45-6-1 *et seq.* (collectively, "RICO"), it is unlawful for any person who has received any income derived from a pattern of racketeering activity to use any part of such income or the proceeds thereof to acquire an interest in or establish an enterprise which is engaged in or affects interstate commerce.  (18 U.S.C. §1962(a); *see also* Ind. Code §35-45-6-2(1).)

97.     It is unlawful under RICO for any person through a pattern of racketeering activity to acquire any interest in or control any enterprise which is engaged in or affects interstate commerce.  (18 U.S.C. §1962(b); *see also* Ind. Code §35-45-6-2(2).)

98.     It is unlawful under RICO for any person employed by or associated with any enterprise engaged in or affecting interstate commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity.  (18 U.S.C. §1962(c); *see also* Ind. Code §35-45-6-2(3).)

99.     It is unlawful under RICO for any person to conspire to violate any of the provisions of RICO set forth in the foregoing paragraphs.  (18 U.S.C. §1962(d).)

100.    By committing numerous separate acts of theft against PSG while he was employed as its CEO, Krynski has received income from a pattern of racketeering activity to acquire an interest in, establish, or control Competitor which is engaged in or affects interstate commerce in violation of RICO.

101.    On information and belief, in violation of RICO, Krynski conspired with one or more other persons to commit his multiple acts of theft from PSG that presently total more than $100,000.

102.    By obtaining solar energy products and equipment through skimming them from customer projects on at least three (3) separate occasions without the knowledge or consent of PSG or its customer and transporting them through interstate commerce for their personal use or sale or for their financial benefit, Krynski, Cooper, and Cole engaged in "racketeering activity" to commit theft from interstate shipment in violation of 18 U.S.C. §§ 1961, 1962(a), 2314, and 2315; *see also* Ind. Code §§ 35-45-6-1 and -2.

103.    By stealing the Trade Secrets, and downloading, transmitting or otherwise conveying them away from PSG and to or for their own benefit including to benefit Competitor, Krynski and Cooper (and others suspected to be discovered hereafter) engaged in "racketeering activity" for the theft of trade secrets in violation of "Defend Trade Secrets Act of 2016." (18 U.S.C. §§ 1832(a)(1) and (a)(2); 1961, 1962(a); *see also* Ind. Code §§ 24-2-3-1 *et seq.* and 35-45-6-1 and -2.)

104.    By receiving or possessing the Trade Secrets, Competitor, Krynski, Cooper (and on belief, other persons who work for Competitor) engaged in "racketeering activity" for the theft of trade secrets in violation of "Defend Trade Secrets Act of 2016."  (18 U.S.C. §§ 1832(a)(3), 1961, 1962(a) ); *see also* Ind. Code §§ 24-2-3-1 *et seq.* and 35-45-6-1 and -2.)

105.    On information and belief, Krynski and Cooper (and others suspected to be discovered hereafter) conspired to steal away and use the Trade Secrets for their personal gain and/or the economic benefit of Competitor to the exclusion or detriment of PSG and knew that such theft would injure PSG, thereby engaging in "racketeering activity" for the theft of trade secrets in violation of "Defend Trade Secrets Act of 2016."  (18 U.S.C. §§ 1832(a)(5), 1961, 1962(a); *see also* Ind. Code §24-2-3-1 *et seq.*)

106.    By committing two or more acts of racketeering activity for the theft of the Trade Secrets for their collective benefit and to establish and operate Competitor in interstate commerce, Krynski, Cooper, and Competitor (and others suspected to be discovered hereafter) engaged in a "pattern of racketeering activity" prohibited by RICO under 18 U.S.C. §§ 1832(a), 1961, and 1962; *see also* Ind. Code §§ 24-2-3-1 *et seq.* and 35-45-6-1 and -2.

107.    Pursuant to RICO, PSG is entitled to obtain (and does seek herein) appropriate orders to prevent further RICO violations, including but not limited to: (a) that Competitor and

the other Defendants divest themselves from each other; (b) that Defendants' activities in the type of endeavor (i.e., solar energy or other business similar to PSG or its affiliated businesses) be restricted from engaging in such activities; and (c) that Defendants' enterprise (i.e., Competitor) be dissolved with provision for any innocent persons.  (18 U.S.C. §1964(a).)

108.    PSG is entitled to recover threefold its damages sustained, costs, and reasonable attorneys' fees.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski Cooper, Cole, and Competitor (and others discovered and proven hereafter) for its damages, triple the full amount of all actual damages incurred by PSG (including but not limited to PSG's lost profits), costs, attorneys' fees, and all other appropriate relief awardable due to their unlawful RICO violations.

## COUNT VIII:  BREACH OF FIDUCIARY DUTY

109.    PSG incorporates the foregoing paragraphs numbered 1 through 108 as if fully set forth herein.

110.    At all times relevant hereto, PSG was and is owned 20% by Krynski and 80% by Envelop.

111.    Based upon his ownership, membership, and executive-level status with PSG, Krynski owed fiduciary duties to Envelop as the other owner of PSG to act openly, honestly, loyally, and in good faith and fair dealing.

112.    Krynski breached his fiduciary duties owed to Envelop in the following ways:

a. Stealing monies, equipment, property, and confidential and proprietary information belonging to PSG for personal purposes of at least $100,000 discovered to date;

b. Diverting and secreting opportunities from his partners for his personal financial gain (e.g., Energient ownership);

c. Failing to fully disclose all conflicts of interest before engaging in such activity, including but not limited to buying an ownership interest in a subcontractor to PSG (e.g., Energient);

d. Receiving in the form of a "kickback" the Energient ownership interest and any dividends therefrom for the PSG business that he directed to Energient without allowing anyone to compete with Energient for that business (and other suspected similar arrangements to be discovered hereafter);

e. Denying the truth about his side business activities, even when directly asked, such as denying the extent of ownership in Energient, affirmatively stating his return of such ownership interest when in fact he had not done so, and refusing to disclose his other improper activities that harmed PSG when he was asked to report them;

f. Acting outside the scope of his authority in offering or entering into agreements, promises, and warranties with or to customers and other persons to the harm and detriment of PSG;

g. Misappropriating the Trade Secrets;

h. Enticing breaches of duties owed by others to PSG to further his personal interests and financial gain, including their misappropriation of Trade Secrets, computer trespass, violation of the Act, theft, conversion, and breach of duty of loyalty;

i. Tortiously interfering with PSG's business relationships;

j. Hiring away PSG's employees for Competitor;

k. Stealing products and equipment by skimming them from customer projects, and allowing other persons to do so, for personal and/or financial gain;

l. Forming and promoting Competitor to solicit PSG's sales customers and otherwise compete with PSG; and

m. Otherwise planning to, and carrying out, acts of unfair competition against PSG.

113. Envelop has suffered damages as a result of Krynski's wrongful conduct.

114. Krynski's wrongful conduct was willful, malicious, and intentionally harmful to Envelop, entitling PSG to recover punitive damages, costs, and attorneys' fees.

WHEREFORE, Envelop prays that the Court enter judgment in its favor and against Krynski for all damages, punitive damages, costs, attorneys' fees, and other appropriate relief awardable due to Krynski's breach of fiduciary duty.

## COUNT IX:  BREACH OF DUTY OF LOYALTY

115.    PSG incorporates the foregoing paragraphs numbered 1 through 114 as if fully set forth herein.

116.    Each PSG employee owed to PSG a duty of loyalty to act honestly and in good faith while carrying out his duties in the best interests of PSG.

117.    Krynski and Cooper (and others suspected to be discovered hereafter) breached their duties of loyalty when they misappropriated the Trade Secrets, stole PSG property and confidential and proprietary information, misused PSG funds, committed computer trespass, violated the Computer Fraud & Abuse Act, and/or tortiously interfered with PSG's sales customers and/or employee relationships.

118.    Krynski, Cooper, and Cole (and others suspected to be discovered hereafter) breached the duties of loyalty when they obtained solar energy products and equipment from customer projects without paying for or disclosing the same, which harmed PSG.

119.    PSG has suffered damages as a result of Krynski's and Cooper's wrongful conduct.

120.    The foregoing wrongful conduct was willful, malicious, and intentionally harmful, entitling PSG to recover punitive damages, costs, and attorneys' fees.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski, Cooper, and Cole (and others discovered and proven hereafter) for all damages, punitive

damages, costs, attorneys' fees, and other appropriate relief awardable due to their breach of the duty of loyalty.

## COUNT X:  BREACH OF CONTRACT

121.    PSG incorporates the foregoing paragraphs numbered 1 through 120 as if fully set forth herein.

122.    The Employment Agreement is a valid and binding contract signed by Krynski.

123.    The Operating Agreement is a valid and binding contract signed by Krynski.

124.    The Confidentiality Conditions inclusive of the Confidentiality Agreement constitute a valid and binding contract to which Krynski agreed to be bound by receiving PSG information and Trade Secrets as part of his exercise of rights under the Push-Pull Option.

125.    By committing any of the wrongful conduct described herein, Krynski has breached the duties imposed upon him under the Employment Agreement.

126.    By committing any of the wrongful conduct described herein, including, but not limited to, his failure to fulfill his contractual obligation to purchase Envelop's ownership interest in PSG, Krynski has breached the duties imposed upon him under the Operating Agreement.

127.    By disclosing and using the information subject to the Confidentiality Conditions, Krynski has breached the duties imposed upon him thereunder.

128.    PSG has suffered damages as a result of Krynski's breaches of contract.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski for all damages and other appropriate relief awardable due to his breaches of contract.

## COUNT XI:  CONSTRUCTIVE TRUST

129.    PSG incorporates the foregoing paragraphs numbered 1 through 128 as if fully set forth herein.

130.    Krynski, through his breach of the Push-Pull Option that he exercised, wrongfully remains a 20% owner and membership in PSG.

131.    Pursuant to the Operating Agreement, Krynski's ownership and membership interests are subject to transfer restrictions.

132.    As alleged herein, Krynski has acted in breach of numerous duties owed by him to PSG and caused considerable harm and damage to PSG, which is ongoing.

133.    To the extent that Krynski is owed any monies with respect to his ownership and membership interests in PSG, PSG is entitled to (and does seek herein) a right of set-off against said monies for the damages to which it is entitled to recover as and against Krynski for his wrongful conduct.

134.    To allow Krynski to gain an advantage over PSG in retaining his ownership or membership status in PSG would reward him for his wrongful conduct.

WHEREFORE, PSG prays that the Court exercise its equitable powers to enter a judgment of constructive trust over the ownership and membership interests of Krynski in PSG, including any amounts payable as a consequence thereof or proceeds therefor, until such time as it makes a final determination of the parties' respective claims, damages, and offsets thereof, and for all other appropriate relief awardable due to Krynski's breaches of duty and other wrongful acts committed against PSG.

## COUNT XII:  REPLEVIN

135.     PSG incorporates the foregoing paragraphs numbered 1 through 134 as if fully set forth herein.

136.     Without PSG's authorization, Defendants wrongfully obtained and/or wrongfully retained property belonging to PSG, including but not limited to PSG's confidential and proprietary information, such as the Trade Secrets and the information subject to the Confidentiality Conditions.

137.     PSG's ownership rights of its information and property are superior and exclusionary to all other persons or entities, including Defendants.

138.     Pursuant to Indiana Code § 32-35-2-1 *et seq.*, PSG is entitled to immediate possession of all of its information and property and any materials derived therefrom.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Defendants for the immediate and permanent return of all of PSG's property and information, and all other appropriate relief awardable due to Defendants' wrongful taking and/or detention of PSG's property.

## COUNT XIII:  UNJUST ENRICHMENT

139.     PSG incorporates the foregoing paragraphs numbered 1 through 138 as if fully set forth herein.

140.     Defendant Employees Krynski and Cooper (and others suspected to be discovered hereafter) were unjustly enriched by receiving pay and benefits from PSG to act in PSG's best interests when instead they were causing harm to PSG.

141.    For their unjust enrichment, Krynski and Cooper (and others suspected to be discovered hereafter) owe to PSG a disgorgement of compensation and benefits received from PSG during the time period of their wrongful conduct.

WHEREFORE, PSG prays that the Court enter judgment in its favor and against Krynski and Cooper (and others discovered and proven) for all damages (including but not limited to compensation and benefits paid by PSG to them during the period of their wrongful conduct) and other appropriate relief awardable due to their unjust enrichment.

## COUNT XIV:  ACCOUNTING

142.    PSG incorporates the foregoing paragraphs numbered 1 through 141 as if fully set forth herein.

143.    As an owner and member of PSG, Krynski still owes fiduciary duties to PSG and Envelop.

144.    PSG and Envelop are entitled to a full accounting of all of Krynski's activities that may have been or may still be conflicts of interest and/or otherwise relevant or harmful to PSG's business, financial status, and future success.

WHEREFORE, PSG and Envelop pray that the Court enter an order of affirmative equitable relief in its favor and against Krynski for a full accounting of his conflicting, relevant, or harmful activities as to PSG or Envelop and a judgment in their favor for all other appropriate relief awardable during Krynski's period of ownership and membership in PSG.

## PRAYER FOR RELIEF

For all of the foregoing reasons, PSG prays for judgment in its favor and against each and every Defendant for the relief claimed herein in order to stop all activities that irreparably harm Plaintiffs, to restore to Plaintiffs their Trade Secrets and other property, materials, monies, and

information, to take all reasonable and appropriate measures to protect Plaintiffs from further harm by Defendants' wrongful conduct, for all damages, punitive damages, costs, prejudgment interest, attorneys' fees, and equitable relief as allowed by law.

## DEMAND FOR JURY TRIAL

PSG, by counsel and pursuant to Fed.R.Civ.P. 38, hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

RILEY BENNETT EGLOFF LLP

s/ Kathleen Hart
Kathleen Hart, No. 18403-49
khart@rbelaw.com

Attorneys for Plaintiffs,
PSG Energy Group, LLC and
Envelop Group, LLC

RILEY BENNETT EGLOFF LLP
Fourth Floor
141 East Washington Street
Indianapolis, IN  46204
(317) 636-8000
(317) 636-8027 (Fax)